COOLEY LLP
ROBERT L. EISENBACH III (124896)
GREGG S. KLEINER (141311)
101 California Street, 5th Floor
San Francisco, CA 94111-5800
Telephone: (415) 693-2000
Facsimile: (415) 693-2222
Email: reisenbach@cooley.com and gkleiner@cooley.com

Counsel for
THE OFFICIAL COMMITTEE
OF UNSECURED CREDITORS

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| In re<br><br>MOUNT DIABLO YOUNG MEN'S CHRISTIAN ASSOCIATION,<br><br>Debtor. | Chapter 11<br><br>Case No. 10-44367-EDJ-11<br><br>**FIRST INTERIM APPLICATION FOR COMPENSATION AND EXPENSE REIMBURSEMENT BY COOLEY LLP, COUNSEL FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, FOR THE PERIOD MAY 11, 2010 TO SEPTEMBER 30, 2010**<br><br>Date: November 18, 2010<br>Time: 2:30 p.m.<br>Ctrm: 215<br>Place: 1300 Clay Street<br>       Oakland, California<br>Judge: Honorable Edward D. Jellen |

**TO THE HONORABLE EDWARD D. JELLEN, UNITED STATES BANKRUPTCY JUDGE:**

Pursuant to sections 330 and 331 of Title 11 of the United States Code (the "Bankruptcy Code"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2016-1 of the Local Bankruptcy Rules (the "Local Rules") for the U.S. Bankruptcy Court for the Northern District of California (the "Court"), Cooley LLP ("Cooley" or "Applicant"), counsel for the Official Committee of Unsecured Creditors (the "Committee") of Mount Diablo

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1195711 v1/SF

1.

COOLEY'S 1ST INTERIM FEE APP.
CASE NO. 10-44367

Case: 10-44367   Doc# 185   Filed: 10/26/10   Entered: 10/26/10 10:43:38   Page 1 of 14

Young Men's Christian Association (the "Debtor") files this First Interim Application for Compensation and Expense Reimbursement, and respectfully represents:

## I. INTRODUCTION

**1.** Debtor: On April 16, 2010 (the "Petition Date"), the Debtor filed a voluntary petition for relief under the Bankruptcy Code. Pursuant to sections 1107 and 1108 of the Bankruptcy Code, the Debtor is continuing to operate its business and its property as a Debtor-in-Possession. No trustee or examiner has been appointed in this case.

**2.** The Committee: On May 7, 2010, the Committee was formed by the Office of the United States Trustee (the "U.S. Trustee"), consisting of the following three members: (i) David Deutscher Co.; (ii) Dean & Margaret Lesher Foundation; and (iii) R.M. Harris Co., Inc. On May 21, 2010, the U.S. Trustee added two additional members to the Committee: City of Oakley and California YMCA Youth & Government, and on May 25, 2010, the U.S. Trustee added two more members to the Committee; City of Clayton and Play-Well TEKnologies.[1] On May 11, 2010, the Committee met and decided to employ Cooley as its counsel to advise it in these proceedings.

**3.** Employment: On June 25, 2010, the Court authorized the Committee to employ Applicant as its counsel herein ("Employment Order"), *nunc pro tunc* to May 11, 2010. A copy of the Employment Order is attached as Exhibit A to the Declaration of Robert L. Eisenbach III in Support of Cooley LLP's First Interim Application for Compensation and Expense Reimbursement (the "Eisenbach Declaration").

**4.** Prior Application and Compensation: This is Applicant's First Application for Interim Compensation and Expense Reimbursement (the "Application").

**5.** Current Compensation: During the course of representing the Committee from May 11, 2010 through September 30, 2010 (the "First Interim Period"), Applicant performed the services described in this Application and in the time summaries attached as Exhibits B and C to the Eisenbach Declaration. Applicant seeks Court approval of interim fees in the amount of $169,679.50 and authorizing the Debtor to pay seventy percent (70%) of the approved interim

---

[1] On August 11, 2010, David Deutscher Co. resigned from the Committee. On September 10, 2010, R.M. Harris Co., Inc. resigned from the Committee.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1195711 v1/SF

2.

COOLEY'S 1ST INTERIM FEE APP.
CASE NO. 10-44367

Case: 10-44367    Doc# 185    Filed: 10/26/10    Entered: 10/26/10 10:43:38    Page 2 of 14

fees to Applicant, with Applicant reserving the right at any time to seek payment of the full approved interim fee amount. Applicant also incurred actual and necessary expenses, as itemized in Exhibits B and C attached to the Eisenbach Declaration. Applicant seeks Court approval authorizing the Debtor to reimburse to Applicant costs and expenses in the amount of $990.02.

**6.** <u>Compliance with Guidelines</u>: Applicant believes that it has complied with the Guide to Applications for Professional Compensation issued by the U.S. Trustee, as well as the national U.S. Trustee guidelines (collectively, the "Guidelines"). Among other things, as a general rule, Applicant's billing practices and hourly rates are identical for bankruptcy and non-bankruptcy clients, and the costs charged to bankruptcy clients are either identical to or less than the costs charged to non-bankruptcy clients. Applicant's cost calculations are as set forth in the Guidelines.

**7.** <u>Bankruptcy Rule 2016 Compensation Statement</u>: Applicant has agreed not to share any compensation awarded with any other person except as permitted by Section 504(b) of the Bankruptcy Code, and the source of any award authorized will be estate funds.

## II. CURRENT SERVICES

### A. Summary

Applicant became involved in this case one business day after the U.S. Trustee appointed the Committee. Immediately upon retention by the Committee, Applicant appeared before the Court on behalf of the Committee at a hearing on, among other matters, the proposed sales of substantially all of the Debtor's operating assets.

More generally, Applicant has been actively engaged in this case, maintaining as its overriding goal the maximization of value of this estate for the benefit of unsecured creditors.

### B. Asset Disposition

On the date that Applicant was engaged by the Committee, May 11, 2010, the Debtor's case had been pending almost one month and the Debtor was very actively engaged in its proposed sale of substantially all of its operating assets to the Berkeley-Albany YMCA in an all cash deal. In fact, on May 10, 2010, the Court approved the Debtor's sale of the Irvin Deutscher Family YMCA, located at 350 Civic Drive in Pleasant Hill, California (the "IDF Facilities"), to the Berkeley-Albany YMCA for $5,530,000.00 in cash with the sale to close no earlier than May

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1195711 v1/SF

3.

COOLEY'S 1ST INTERIM FEE APP.
CASE NO. 10-44367

Case: 10-44367   Doc# 185   Filed: 10/26/10   Entered: 10/26/10 10:43:38   Page 3 of 14

14, 2010 ("Sale Order"). The Sale Order was subject to the Court's May 7, 2010 minute order providing that the Court would entertain an objection to the sale of the IDF Facilities from a party in interest at a hearing scheduled on May 13, 2010.

Immediately after its selection as Committee counsel, Applicant met with the Committee concerning the sale of the IDF Facilities. Although the Committee supported the sale of the IDF Facilities, the Committee wanted an opportunity to review (i) the liens asserted against the IDF Facilities (and cross-collateralized against other of the Debtor's property), and (ii) the payoff demands put into escrow, as the Debtor's sale motions lacked sufficient supporting evidence to enable the Committee to evaluate the appropriateness of the proposed payments. To that end, Applicant drafted and filed a limited objection seeking complete copies of the lien and perfection documents from the secured creditors, together with an opportunity to review and, if appropriate, challenge the liens. Based on the limited objection, the Court continued the hearing on the proposed sale of the IDF Facilities to May 18, 2010, to allow the Committee an opportunity to review the lien documents.

Following the May 13, 2010 hearing, Applicant worked with counsel for the Debtor, Berkeley-Albany YMCA, and the secured creditors and obtained and reviewed lien and perfection documents for secured creditors Orix Public Finance, LLC and Omega Mortgage Co. Applicant also reviewed the title report for the IDF Facilities and multiple iterations of the Seller's Closing Statement produced by the title company. Following Applicant's review of the foregoing information and discussion with counsel and the Committee, Applicant informed the parties and the Court that there was no need for a further hearing on May 18, 2010.

Concurrent with the proposed sale of the IDF Facilities, the Debtor filed multiple motions seeking Court authority to sell certain of its encumbered personal property to Berkeley-Albany YMCA for prices, in most cases, materially less than the Debtor owed to the secured creditor or the lessor of the equipment ("Personal Property Sales"). The proceeds generated from the proposed Personal Property Sales were to be paid to the six respective secured creditors and/or lessors as a condition of their consent to a free and clear sale of their collateral to the Berkeley-Albany YMCA. On behalf of the Committee, Applicant obtained from the Debtor and/or the

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1195711 v1/SF

4.

COOLEY'S 1ST INTERIM FEE APP.
CASE NO. 10-44367

Case: 10-44367   Doc# 185   Filed: 10/26/10   Entered: 10/26/10 10:43:38   Page 4 of 14

lender/lessor loan agreements, notes, security agreements, financing statements and leases by which the Debtor owned or controlled the subject personal property and reviewed the foregoing documents to make sure that all proposed payments were proper. Because the Personal Property Sale motion was pending prior to the appointment of the Committee, Applicant had only a limited time to review the lien/lease documentation before the scheduled hearing on the Personal Property Sale motion. To preserve the rights of the estate's creditors, Applicant drafted and filed a limited objection to the Personal Property Sale motion and seeking from the Debtor a draft proposed order approving the sale motion, copies of all exhibits and schedules to the asset purchase agreement, and a list of proposed payments to be made if the Personal Property Sale motion was approved. The Court agreed with the Committee's position and Applicant was allowed additional time to review the lien and lease documents, speak with counsel for the various lenders and lessors, and review and annotate the final version of the order approving the Personal Property Sale. Applicant completed its review and, after making certain changes to the proposed approval order, the Court approved the Personal Property Sales.

Following the sale of the IDF Facilities and the personal property to the Berkeley-Albany YMCA, Applicant and the Committee sought to work with the Debtor to try to maximize the value of 12.4 acres of undeveloped land in Alamo, California owned by the Debtor ("Alamo Property"). These efforts included working with Debtor's counsel to select a real estate appraiser, evaluating and ultimately rejecting an unsolicited offer for the Alamo Property, and contacting potential brokers and developers to develop a mechanism to sell and/or develop the Alamo Property. Applicant received and greatly modified a listing/development proposal for the Alamo Property. Applicant worked with the Debtor and set up a joint, in-person meeting with the representatives of the Committee, Applicant, the Debtor and its counsel in order to evaluate three potential broker/developers for the Alamo Property, as well as to discuss who would serve as post-confirmation liquidating trustee of the Debtor's estate. At the meeting, the Debtor and the Committee jointly selected CB Richard Ellis ("Broker") to market the Alamo Property. Applicant subsequently reviewed and made multiple changes to the Broker's proposed listing agreement.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1195711 v1/SF

5.

COOLEY'S 1ST INTERIM FEE APP.
CASE NO. 10-44367

Case: 10-44367    Doc# 185    Filed: 10/26/10    Entered: 10/26/10 10:43:38    Page 5 of 14

For its services related to asset disposition, Applicant spent 79.60 hours, incurring fees in the sum of $47,427.50.

### C. Asset Analysis and Recovery

Applicant reviewed Debtor's Schedules and Statement of Financial Affairs and made a series of written, specific requests for documents and information. The Debtor produced certain documents to Applicant concerning the Debtor's pre-petition assets and liabilities piecemeal over a period of months, following repeated requests by Applicant. Applicant requested from Debtor and reviewed and analyzed (when provided) documents and information related to, among other matters: board minutes and records for the five years prior to the Petition Date; documents related to the Wanda Johnson Trust; and the Debtor's Directors and Officers ("D&O") insurance policy.

In addition, Applicant began to investigate the actions of the Debtor's officers and board to determine how and why the Debtor became insolvent. As discussed in greater detail in the First Amended Disclosure Statement, Applicant became aware of certain events involving former officers and employees and members of the Debtor's Board of Directors which, subject to further investigation, may constitute breaches of fiduciary duties of due care, loyalty, and good faith, as well as negligence, gross negligence, violations of law and statute, failure to investigate and/or report breaches of fiduciary duty and/or violations of applicable law, failure to properly monitor and supervise the Debtor's activities and actions, and other wrongful acts that may be legally actionable. On August 11, 2010, Applicant sent a demand letter to several former officers of the Debtor setting forth these issues. A copy of the letter was also sent to the Debtor's D&O insurer.

As discussed below, based on these preliminary findings, the Committee engaged KPMG to provide financial analysis of the available documents and information to assist in determining what claims, if any, to pursue against the Debtor's current and former employees, officers and/or directors ("D&O Claims").

For its services related to asset analysis and recovery, Applicant spent 44.90 hours, incurring fees in the sum of $26,390.00.

///

///

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1195711 v1/SF

6.

COOLEY'S 1ST INTERIM FEE APP.
CASE NO. 10-44367

Case: 10-44367   Doc# 185   Filed: 10/26/10   Entered: 10/26/10 10:43:38   Page 6 of 14

### D. Business Operations

Soon after Applicant was engaged, it requested a cash flow and operational budget from the Debtor in the form of a 13-week budget, together with historic and current financial information. When the information was ultimately provided, it raised a number of questions for Applicant and the Committee. Among other things, Applicant discovered the Debtor's unauthorized post-petition payment of pre-petition claims, discussed below in Section G. In addition, the Debtor's proposed 13-week budget included line items for proposed payments of certain questionable post-petition amounts, including $12,000 in COBRA payments and $50,000 in unemployment insurance payments. Applicant brought these questionable proposed payments to the attention of Debtor's counsel and understands that the payments were not made.

For its services related to business operations, Applicant spent 14.40 hours, incurring fees in the sum of $8,800.00.

### E. Case Administration

Applicant actively reviewed the Debtor's activities and all filed pleadings in the case, and drafted bylaws for the Committee, which the Committee adopted. In addition, Applicant provided regular, detailed updates to members of the Committee, by both individual and group telephone calls and emails, reporting on developments in the Chapter 11 case, decisions the Committee needed to make, and issues and strategy in moving the case forward toward plan confirmation. Applicant also communicated with the U.S. Trustee's Office regarding resignations by two Committee members, and with Debtor's counsel on case administration matters.

For its services related to case administration, Applicant spent 31.10 hours, incurring fees in the sum of $16,559.50.

### F. Claims

Applicant assisted the Committee with a high level review of certain claims, including the claim filed by Heritage Bank, Union Bank, and the YMCA of the USA. As appropriate, Applicant communicated with members of the Committee about claims and assisted the Committee Chair in securing an agreement with the YMCA of the USA by which it has agreed to

subordinate its $221,049.24 unsecured claim to all other allowed unsecured claims.

For its services related to claims, Applicant spent 6.70 hours, incurring fees in the sum of $3,289.50.

### G. Employee Benefits/Pensions

Through its review of information requested of the Debtor, Applicant determined that the Debtor, post-petition, had paid more than $66,000 in certain unsecured, pre-petition trade creditor claims without Court approval. Applicant informed Debtor's counsel of its findings. Debtor's proposed First Amended Plan and First Amended Disclosure Statement acknowledges these payments and provides that it will seek to avoid or settle these transfers following confirmation of its plan.

In addition, Applicant determined that the Debtor had paid certain of its employees, post-petition, approximately $80,000 in pre-petition wages and PTO without Court approval. The Debtor also then intended to pay an additional $46,439 in pre-petition wages and PTO to its remaining employees without Court approval. Again, Applicant alerted Debtor's counsel of its findings and vigorously objected to any further payments of pre-petition obligations without prior notice and a hearing. The Debtor filed a motion for *nunc pro tunc* approval to pay the approximately $80,000 in wages and PTO already paid without Court approval and for approval to pay an additional $46,439 in pre-petition wages and PTO. Following consultation with the Committee, Applicant objected to payment of additional wages and PTO that did not fall within the priority provisions of Sections 507(a)(4) and (5). The Court agreed with the Committee's objection and the Debtor was only authorized to pay those additional wages and PTO that constituted priority claims.

For its services related to employee benefits/pensions, Applicant spent 3.10 hours, incurring fees in the sum of $1,882.50.

### H. Employment Applications

Applicant performed required services in connection with seeking approval of its own employment in accordance in accordance with applicable rules and requirements, U.S. Trustee guidelines, and the Bankruptcy Code. Applicant reviewed and prepared its monthly invoices,

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1195711 v1/SF

8.

COOLEY'S 1ST INTERIM FEE APP.
CASE NO. 10-44367

Case: 10-44367   Doc# 185   Filed: 10/26/10   Entered: 10/26/10 10:43:38   Page 8 of 14

reviewed applicable guidelines and orders in connection with this Application, adjusted and organized its monthly invoices in accordance with such guidelines.

In early June, Applicant was contacted by Debtor's counsel with regard to the Debtor's intent to engage Burr Pilger and Mayer ("BPM") to assist the Debtor in filing its Monthly Operating Reports and with other limited bookkeeping tasks. Applicant reviewed the BPM employment application, consulted with the Committee, and informed the Debtor that it had concerns with the proposed engagement of BPM because: (i) a partner in BPM, Jenise Gaskin, was also a member of the Debtor's board of directors; and (ii) the BPM engagement letter included provisions that were objectionable. Those provisions included an arbitration provision (as opposed to the Court retaining jurisdiction over all disputes), an indemnification provision, a provision waiving actual or perceived conflicts, the payment of a post-petition retainer, and interest being charged on late invoices. Applicant raised these and other concerns with Debtor's counsel and in response (x) BPM formally screened off Ms. Gaskin from the engagement, and (y) the engagement letter was revised to eliminate the objectionable provisions.

As noted above, in light of D&O Claims issues, the Committee concluded that a financial advisor was needed to perform a preliminary review of the Debtor's records. Applicant worked with the Committee to locate an appropriate financial advisor KPMG, and Applicant negotiated a significantly reduced hourly rate for the initial phase of KPMG's employment. After working through objections raised by the Debtor to KPMG's proposed employment, Applicant had KPMG revise its employment application as financial advisors for the Committee.

For its services related to fee/employment applications, Applicant spent 20.80 hours, incurring fees in the sum of $8,974.00.

**I.     Fee/Employment Objections**

Applicant reviewed the interim fee applications filed by Debtor's counsel and by BPM. Applicant had multiple conversations with Debtor's counsel about concerns it had with these applications. While the parties were able to resolve many of the Applicant's concerns, they were initially unable to agree upon a limit on the amount of professional fees that the Debtor may pay. Applicant filed a limited objection to payment of more than seventy percent (70%) ("Payment

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1195711 v1/SF

9.

COOLEY'S 1ST INTERIM FEE APP.
CASE NO. 10-44367

Cap") of the approved amount, together with payment in full of all allowed costs. Prior to the October 7, 2010 hearing, the parties agreed to the Payment Cap, and this was approved by the Court.

For its services related to fee/employment objections, Applicant spent 4.10 hours, incurring fees in the sum of $2,407.50.

### J. Meetings

In addition to several telephonic meetings with the Committee, Applicant meet on two occasions in person with the Committee and jointly with the Committee and representatives of the Debtor and its counsel. During the first of these meetings, the Debtor presented to the Committee an outline of its liquidation proposal for the Debtor and the case. At the second meeting, the parties met with and interviewed multiple candidates interested in listing and/or developing the Alamo Property, and the Committee also met with a potential liquidating trustee.

For its services related to meetings, Applicant spent 16.30 hours, incurring fees in the sum of $10,098.50.

### K. Leases and Executory Contracts

Following the sale of the Debtor's operating assets to the Berkeley-Albany YMCA, Applicant worked with the Debtor to seek prompt Court approval of the rejection of a myriad of leases and contracts that were no longer of value to the Debtor. In addition, the Debtor is tenant under a 99 year ground lease and the owner of the improvements on the land, an incomplete and inoperative theater in Danville ("Theater Lease"). The Debtor scheduled the Theater Lease at a value of $3.8 million and it appeared to have potential value to creditors. Applicant obtained and reviewed copies of the lease, amendments to the lease, pre-petition State Court pleadings concerning litigation related to the Theater Lease, and documents pursuant to which the Debtor borrowed $600,000 from Heritage Bank, secured by the Theater Lease and the improvements. Applicant has actively sought to find a buyer for the Theater Lease and worked with the Debtor to make sure the estate timely obtained an extension of time to assume or reject the Theater Lease.

For its services related to leases and executory contracts, Applicant spent 21.50 hours, incurring fees in the sum of $12,881.00.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1195711 v1/SF

10.

COOLEY'S 1ST INTERIM FEE APP.
CASE NO. 10-44367

Case: 10-44367   Doc# 185   Filed: 10/26/10   Entered: 10/26/10 10:43:38   Page 10 of 14

### L. Plan and Disclosure Statement

In late July 2010, the Debtor filed a Disclosure Statement and Plan of Liquidation. Because the Plan and Disclosure Statement were filed before the Debtor had a clear direction with regard to the Theater Lease and the Alamo Property, the Committee requested and the Debtor agreed, to continue the hearing on the Disclosure Statement to October 7, 2010.

Once the parties selected the Broker, the Committee discussed other provisions of the Plan and Disclosure Statement with Applicant. Applicant made extensive and material modifications to the Plan and Disclosure Statement to protect the interests of creditors, including clarifying the treatment of creditors under the Plan, revising the proposed disposition of the Theater Lease, providing for the Committee's continued existence after confirmation, and giving the post-confirmation Committee authority over the D&O Claims and related claims. Applicant provided these revisions to Debtor's counsel. Applicant had multiple phone conferences and exchanged many emails with Debtor's counsel regarding the Committee's suggested revisions to the Disclosure Statement and the Plan.

While the Debtor indicated that it would accept the vast majority of the Committee's requested changes, the parties were unable to reach agreement on whether the Committee and/or the Liquidating Trustee under the Plan would pursue (i) Chapter 5 avoidance claims, and (ii) what claim review and objection rights the Committee would have under the liquidating trust agreement. To preserve the Committee's rights with regard to these specific items and in general with regard to the yet to be circulated Amended Disclosure Statement and Amended Plan, the Committee filed a limited objection to the Disclosure Statement. While it goes beyond the scope of time covered by this Application, Applicant attended the October 7, 2010 hearing on the Amended Disclosure Statement and the parties, with the Court's assistance, were able to resolve their differences. Soon thereafter, the Court approved a further revised form of the Amended Disclosure Statement.

For its services related to plan and disclosure statement, Applicant spent 36.90 hours, incurring fees in the sum of $21,636.00.

///

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1195711 v1/SF

11.

COOLEY'S 1ST INTERIM FEE APP.
CASE NO. 10-44367

Case: 10-44367   Doc# 185   Filed: 10/26/10   Entered: 10/26/10 10:43:38   Page 11 of 14

**M. Court Hearing**

Applicant prepared for and attended multiple hearings in the case, including on the IDF Facilities sale, the Personal Property Sale motion, a case status conference, and the employee PTO motion.

For its services related to court hearings, Applicant spent 5.20 hours, incurring fees in the sum of $3,510.00.

**N. Relief from Stay Proceedings**

Applicant reviewed and made multiple suggested changes to California Bank & Trust's proposed stipulation for relief from stay. Applicant also worked with the Debtor and counsel for AFCO Finance with regard to resolving AFCO's motion for relief from stay, which sought to terminate Debtor's insurance coverage for the Theater Lease and Alamo Property because of the Debtor's alleged failure to pay post-petition premiums to AFCO.

For its services related to relief from stay, Applicant spent 7.20 hours, incurring fees in the sum of $4,001.00.

**O. Travel**

This category includes time for non-working travel during which legal services were not performed. On June 14, 2010 and September 21, 2010, Applicant traveled from San Francisco to Walnut Creek to attend committee meetings.

For the above services, Applicant spent 2.70 hours, incurring fees in the sum of $1,822.50.

**III. FUTURE SERVICES**

Applicant anticipates continuing to provide the Committee with counsel and assistance on a variety of matters, including confirmation of the recently filed First Amended Plan, resolution of the Theater Lease, and efforts to sell the Alamo Property.

**IV. ESTABLISHMENT OF FEES**

"There is a 'strong presumption' that payment of one's standard hourly rates constitutes 'reasonable compensation.'" *In re Meronk*, 249 B.R. 208, 213 (B.A.P. 9th Cir. 2000) (quoting *In Re Manoa Fin. Co.*, 853 F.2d. 687, 692 (9th Cir. 1988); *see also*, *e.g.*, *In re Buckridge*, 367 B.R. 191, 202 (Bankr. C.D. Cal. 2007) (applying "lodestar" analysis to determine appropriateness of fee

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1195711 v1/SF

12.

COOLEY'S 1ST INTERIM FEE APP.
CASE NO. 10-44367

Case: 10-44367    Doc# 185    Filed: 10/26/10    Entered: 10/26/10 10:43:38    Page 12 of 14

enhancement). Establishing a reasonable hourly rate requires consideration of market rates in the relevant community which are, in turn, at least partly a function of the type of services rendered and the lawyer's experience, skill and reputation.

Applicant's invoices evidence the reasonableness of Applicant's requested fees and are attached to the Eisenbach Declaration as Exhibit B (categorical) and Exhibit C (chronological). In addition, a summary sheet of attorneys and paraprofessionals who have worked on this case, the type of professional, hourly rate, the total hours each devoted to the case, and the total fees requested for each professional, together with summaries of the attorneys and paraprofessionals' qualifications, are attached hereto collectively as Exhibit D to the Eisenbach Declaration.

## V. CONCLUSION AND PRAYER

**1.** In performing the services described above during the First Interim Period, Applicant spent 294.50 hours and incurred $169,679.50 in fees as reflected on its statements issued to the Debtor. Applicant believes that this amount is reasonable compensation for its services, calculated on the basis of the hours and hourly rates listed in the attached summary and the time summaries attached to the Eisenbach Declaration.

**2.** In performing its services during the First Interim Period, Applicant incurred actual and necessary expenses of $990.02. An itemized summary of these expenses is set forth on Exhibit E to the Eisenbach Declaration.

**3.** Notice of this Application is being served on creditors and appropriate parties in interest pursuant to applicable rules, orders and the Guidelines. This Application and the accompanying Eisenbach Declaration were filed with the Court and served on or before October 26, 2010.

**WHEREFORE**, Cooley LLP prays for an order approving interim compensation in the sum of **$169,679.50** and expense reimbursement in the sum of **$990.02** for the First Interim Period, directing payment by the Debtor to Applicant consistent with such interim allowance at 70% of the allowed fees and payment of all allowed expenses, subject to Applicant's ability to request full

///

///

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1195711 v1/SF

13.

COOLEY'S 1ST INTERIM FEE APP.
CASE NO. 10-44367

Case: 10-44367    Doc# 185    Filed: 10/26/10    Entered: 10/26/10 10:43:38    Page 13 of 14

payment, and granting Applicant such other and further relief as is just and proper.

Dated: October 26, 2010       COOLEY LLP

By: /s/ Robert L. Eisenbach III
 Robert L. Eisenbach III

Counsel for
THE OFFICIAL COMMITTEE
OF UNSECURED CREDITORS

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1195711 v1/SF

14.

COOLEY'S 1ST INTERIM FEE APP.
CASE NO. 10-44367

Case: 10-44367    Doc# 185    Filed: 10/26/10    Entered: 10/26/10 10:43:38    Page 14 of 14